CLARENCE E. McMANUS, Judge.
li>On June 7, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant, Brandon Dorsey, with the following offenses: aggravated flight from Deputy Bob McNulty in violation of LSA-R.S. 14:108.1 C (Count 1); possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1 (Count 2); attempted armed robbery of Jena Moorman while armed with a firearm in violation of LSA-R.S. 14:27 and 14:64 (Count 4); and armed robbery of Enola Jackson while armed with a firearm in violation of LSA-R.S. 14:64 (Count 5).[1] Defendant was ar *52 raigned on June 22, 2010 and pled not guilty.
On December 7, 2010, the State amended Count 4 of the bill of information to allege that both defendant and co-defendant, Glenn Dickerson, committed the armed robbery of Jena Moorman while armed with a firearm in violation of LSA-R.S. 14:64. On that same date, the State also amended Count 6 of the bill of information to allege that both defendant and Dickerson committed the armed robbery of Gregory Barbier while armed with a firearm in violation of LSA-R.S. 14:64. Defendant was arraigned on the amended bill and pled not guilty on December 13, 2010.
On December 8, 2010, the State filed a “Notice of Intent to Invoke Firearm Sentencing Provision Under Louisiana Revised Statute 14:64.3.” On December 15, 2010, the trial judge denied defendant’s motion to sever offenses. After a | shearing, defendant’s motion to suppress statement was denied on March 2, 2011. On March 2 and 3, 2011, the case was tried before a 12-person jury that found defendant guilty as charged on Counts 1, 2, and 4 and not guilty on Counts 5 and 6.
Defendant’s motion for new trial and motion for post-verdict judgment of acquittal were denied on April 1, 2011, after a hearing. On that same date, defendant waived sentencing delays, and the trial judge sentenced him on Count 1 to imprisonment at hard labor for two years, on Count 2 to imprisonment at hard labor for ten years, and on Count 4 to imprisonment at hard labor for thirty-five years.
The State filed a multiple bill alleging defendant to be a third felony offender, and defendant denied those allegations. Defendant later filed a “Response and Objection to Habitual Offender Bill of Information” on April 21, 2011. On April 29, 2011, defendant filed a motion for appeal that was granted.
On June 27, 2011, the trial judge found defendant to be a third felony offender after a hearing. Defendant’s “Motion to Depart from Mandatory Minimum Sentence Pursuant to LSA-R.S. 15:529.1” was denied. The trial judge then vacated the original sentence on Count 4 and re-sentenced defendant under the multiple bill statute to imprisonment at hard labor for 67 years to be served without benefit of probation or suspension of sentence. Defendant’s motion to reconsider sentence was denied. On July 21, 2011, defendant filed a timely motion for appeal that was granted.[2]
The following was adduced at trial. On April 24, 2010, at approximately 1:00 a.m., Enola Jackson arrived home and parked in front of her house at 2905 Dove Avenue on the Westbank in Jefferson Parish, after which a dark-colored car pulled up behind her. Two black males with guns approached her vehicle, one on peach side, and told her to give them what she had. When they subsequently asked for her purse, Ms. Jackson told them she did not have one. Afterward, the males took her cell phone and an old radio and then left in their car. She thought that there might have been a third person in the suspects’ car because the car was running.
Ms. Jackson called 911 and reported the incident. She described one of the males as very dark-skinned with a low haircut, *53 and the other male as being a lighter color ■with dreadlocks and a gold tooth in the top of his mouth. Later that night, a police officer took her to a scene, where she identified Glenn Dickerson as the robber with the dreadlocks. Her level of certainty of the identification was between “a seven and eight.” Ms. Jackson believed that defendant looked like the other robber, but she was not as sure of that identification as she was of her identification of Dickerson.
On April 24, 2010, at approximately 1:80 a.m., Gregory Barbier pulled in his driveway at 1009 Curtis Drive in Harvey. His girlfriend, Jena Moorman, and her 10-year-old son were in the truck with him. Mr. Barbier exited the truck and walked to the front of it. At that point, a black male put a gun in his face and said, “Give me my money.” When Mr. Barbier said he did not have any money, the robber said, “Give me my f.cking money.” Again Mr. Barbier said he did not have any money as he put his hands up and took a couple of steps backwards.
At that point, he heard Ms. Moorman scream, and when he turned and looked, there were two other black males on the other side of the truck. All three males were armed. Mr. Barbier ran around to the back of the truck, and one of the males hit him in the back of the head and knocked him down. As Mr. Barbier was standing up, he saw the three males run to their car, a black Ford Contour, and take |Boff. The robbers took Ms. Moorman’s purse. They also took a bag of clothes and a cosmetic bag Mr. Barbier had in his hand.
After checking on Ms. Moorman and her son, Mr. Barbier ran after the car with á cell phone in his hand and called 911. While he was on the phone, Ms. Moorman picked him up in the truck, and they drove across the expressway to the other side of Farington, but they lost track of the vehicle. Mr. Barbier described the first person who approached him as a big guy with a dark-colored shirt and dreadlocks. He also described one of the other robbers as having dreadlocks and the other one as having short hair.
Later on, Mr. Barbier viewed a photographic lineup and positively identified Glenn Dickerson, the perpetrator who was the “big guy” with the dreadlocks. He was not able to identify anyone else. Mr. Barbier identified numbers 2 and 3 in the lineup as possible perpetrators; however, defendant’s photograph was in position number 6. Ms. Moorman was not able to identify anyone in the photographic lineups.
After the robberies, Officer Renoid Ber-thelot of the Jefferson Parish Sheriffs Office (JPSO) was advised to be on the lookout for a small-four-door sedan occupied by three black males. A vehicle matching that description with three black males was found at the Discount Zone gas station at 7840 Westbank Expressway parked in front of a gas pump. The vehicle was occupied by two subjects, and there was a black male with long dreadlocks who was pumping gas at the vehicle.
A deputy parked behind the -suspects’ vehicle. As soon as- Officer Berthelot pulled up, the male pumping gas turned and took off running, leaving the pump in the gas tank of the car. The suspects’ vehicle immediately took off, ripping the gas pump nozzle out of the car. The suspects led numerous police officers on a high-tspeedfi chase to St. Charles Parish, disregarding traffic signals and signs. When they got to Interstate 310 onramp in Luling, the back seat passenger pointed a gun out of the back glass in Deputy Bobby McNulty’s direction. Deputy McNulty then rammed the back of the suspects’ vehicle. The front seat passenger passed *54 a handgun to the back seat passenger, and the back seat passenger subsequently threw two guns out of the window, which caused sparks to fly as the guns hit the ground.
Afterward, the underside of the suspects’ vehicle was engulfed in fire from the front tires to the back of the car. The suspects’ vehicle came to a stop, the doors opened, and the driver and passenger exited the vehicle. They attempted to run; however, after a struggle, they were subdued and apprehended. A semi-automatic handgun and a .357 revolver were recovered from Interstate 310 onramp.
Defendant was subsequently booked as a fugitive in St. Charles Parish, after which Deputy McNulty took defendant to University Hospital in New Orleans. After defendant was treated at the hospital for injuries he sustained in the altercation with police officers, he was transported to the Jefferson Parish Correctional Facility.
John Carroll, who was employed by the JPSO on April 24, 2010, then met with defendant and advised him of his rights. After defendant indicated he understood them and waived them, he gave a statement that was played for the jury.' In that statement, dated April 24, 2010 at 1:23 p.m., defendant said that the night before he was with Dickerson and “Black.” They were riding around when “Black” suggested they should rob someone. Defendant asserted that “Black” had a semi-automatic gun and Dickerson had a .357 revolver. Defendant denied having a gun. He stated that they first robbed an “old black woman.” “Black” |7went to the driver’s side door, and Dickerson went to the passenger’s side door. When they came back to the car, they had a phone and something else.
Defendant said in his statement that they next robbed a white man and woman in a truck parked in a driveway. He remembered Dickerson went up to the vehicle and said, “Give me the money.” He also remembered the woman saying that her child was in the vehicle. “Black” talked to the woman, and then took her brown purse and ran back to the car. After that, defendant was driving, Dickerson was in the back seat, and “Black” was in the passenger’s seat. They had the same guns they had the first time. They drove off in the car that Dickerson told him was a “rock rental.”
In his statement, defendant said they subsequently went to a gas station, and “Black” got out of the car and went inside the store to pay for the gas. Defendant saw the police so he pulled off and left “Black” because he did not want to go to jail. He fled through Westwego almost to Luling. During the chase, the officer rammed them in the back. Defendant gave Dickerson the gun from the front seat and told him to throw it out the window because defendant was on probation and not allowed to have a firearm.
Dickerson threw two guns out of the window. After that, defendant saw the back of the car on fire, so he stopped. Defendant put the car in park, opened the door, and he and Dickerson exited the vehicle and both were apprehended. Defendant was shown a photograph of Dickerson, and he positively Dickerson as the person who participated in the robberies with him that night.
During the investigation of the robberies, JPSO Detective David Canas learned that the dark green Ford Contour used during the robberies belonged to Janet Harris, who informed him that she loaned her vehicle to “Joe” for three pieces of crack cocaine. When the detective showed Ms. Harris a photograph of |sGlenn Dickerson, she positively identified him as the *55 person she loaned the car to the day before the robberies.
After obtaining a search warrant, JPSO Detective Randy Thibodeaux searched the Ford Contour and recovered Ms. Moor-man’s purse along with some bills in her name. Detective Thibodeaux also recovered a weapon from the vehicle. He testified that in his report, he wrote that Ms. Jackson, the victim of the first armed robbery, was positive that defendant was not one of the two subjects who approached her vehicle window.
Deputy McNulty identified defendant in court as the front seat driver he assisted in pursuing on the night in question. He also testified that the backseat passenger was Glenn Dickerson.
Glenn Dickerson testified that he did not know defendant, and that he pled guilty to three counts of armed robbery because the State offered him 25 years. He then refused to answer any more questions and was found in contempt of court.
Since defendant was charged with possession of a firearm by a convicted felon, the State had to prove that defendant had a prior conviction. To that end, Aisha Prudhomme, an expert in the field of taking, analyzing, and identifying latent prints, obtained defendant’s fingerprints in court. She testified that defendant’s fingerprints matched the fingerprints found in the certified conviction for possession of cocaine.
In his first allegation of error, defendant argues that the trial judge erred by denying his motion for mistrial, which was based upon the mid-trial discovery that one of the jurors was acquainted with Jena Moorman, a victim, a fact that the juror communicated to his fellow jurors before he was excused.
The record reflects that after Ms. Moor-man testified, a break was taken. The trial judge then stated that he had just been informed by the bailiff that juror, James | aHinchey, knew Ms. Moorman. He further stated that they had a conference in chambers with Mr. Hinchey, and that he was going to have Mr. Hinchey testify regarding the situation. Mr. Hinchey subsequently testified that he knew Ms. Moor-man, one of the victims, from his stepdaughter, and that Ms. Moorman was at his house as recently as Christmas Day. Mr. Hinchey stated that he had not spoken with Ms. Moorman about the armed robbery and did not know anything about it.
When asked if he mentioned that fact in the jury room to other jurors, Mr. Hinchey replied that he only told them that he knew one of the victims. He said that he made a phone call from the jury room to his wife to find out Jena’s last name, because he was unsure of it. His wife, in turn, called her daughter, and her daughter called her back and told her the last name, and it matched. The trial judge asked Mr. Hinchey if the other jurors overheard his conversation, and Mr. Hin-chey responded that they were all in the same room, which was small. It was only afterward, Mr. Hinchey told the bailiff.
After hearing arguments of counsel, the trial judge denied the motion for mistrial, finding that the extent of which Mr. Hin-chey “told the other members of the jury that his knowledge of the victim I [the judge] don’t think that prejudices your client.” After the trial, defense counsel filed a motion for new trial, arguing that a new trial should be granted based on several grounds, one of which was that Mr. Hinchey knew the victim, had her over for Christmas, and then relayed that information to the jury in violation of the court’s order not to discuss the case. After hearing arguments of counsel, the trial judge denied the motion for new trial.
*56 A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Davis, 08-165, p. 17 (La.App. 5 Cir. 7/29/08), 993 So.2d 295, 305, writs denied, 08-2188 (La.5/1/09), 6 So.3d 810, and 08-2200 (La.5/1/09), 6 So.3d 811. Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. Id.
LSA-C.Cr.P. art. 775 provides, in pertinent part, “upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.” The trial court has discretion to use the services of an alternate juror, rather than to grant a mistrial, upon a proper finding that this is the best course of action. State v. Tatum, 09-1004, p. 17 (La.App. 5 Cir. 5/25/10), 40 So.3d 1082, 1092.
On review, we find that the trial judge did not abuse his discretion by denying defendant’s motion for mistrial. Initially, it is noted that no mandatory grounds for mistrial under Article 770 are presented here. The testimony at the hearing revealed that the juror, Mr. Hinchey, and the victim, Ms. Moorman, did not have a close relationship. In fact, the juror did not even realize he was acquainted with the victim until he called his wife to inquire as to the victim’s last name. Additionally, there is no evidence to show that the juror’s acquaintance with the victim gave the victim credibility or otherwise tainted the jury or prejudiced defendant. As the State noted in its brief, prospective jurors frequently hear other prospective jurors inform the parties that they are acquainted with prospective witnesses during jury selection. Moreover, the trial judge corrected any perceived prejudice by dismissing the juror from the jury and replacing him with an alternate. Compare State v. Adams, 30,815 (La.App. 2 Cir. 6/24/98), 715 So.2d 118, writ denied, 98-2031 (La.3/19/99), 739 So.2d 774, (the victim’s mother talked to a juror during the trial. The juror was dismissed from the jury and replaced with an | ^alternate to correct the perceived prejudice.); State v. Delore, 381 So.2d 455 (La.1980), (a personal friendship between a juror and a State witness. The evidence did not establish a close relationship between the two, and that the two had only met a few times at the home of mutual friends.)
We find no merit to this assignment of error.
In his second allegation of error, defendant argues that the trial judge erred by prohibiting him from questioning former sheriffs deputy John Carroll regarding alleged leverage the State held over him with respect to charges of distribution of cocaine and steroids, and domestic battery.
Prior to the hearing on the motion to suppress and the trial, the prosecutor requested a ruling regarding the scope of cross-examination as it pertained to John Carroll. The prosecutor noted that the Attorney General’s Office refused the drug charge, but that the domestic battery charge was still pending. She stated that Carroll was not being prosecuted by the District Attorney’s Office for the misdemeanor charges he was currently facing. The prosecutor argued that issues regarding Carroll’s arrests should not be permitted under LSA-C.E. art. 609. Defense counsel contended that under LSA-C.E. art. 607 D(l), he could question Carroll regarding bias, corruption, and interest *57 and whether Carroll expected to receive a benefit in exchange for his testimony in connection with his pending charges. The trial judge disagreed with defense counsel and ruled that he would not be allowed to cross-examine Carroll regarding his drug or domestic battery charges. Before Carroll testified at trial, defense counsel made a continuing objection.
The Sixth Amendment to the United States Constitution guarantees the right of the accused in a criminal prosecution “to be confronted with the witnesses against him.” Additionally, the confrontation clause of the Louisiana Constitution | Tpdirectly affords the accused the right to “confront and cross-examine the witness against him ... ”, La. Const, art. I, Sec. 16.
The credibility of a witness may be attacked by any party, including the party calling him. LSA-C.E. art. 607 A. The right to impeach a witness for bias or interest is encompassed in the right of confrontation, and is specifically dictated by LSA-C.E. art. 607 D. State v. Hollins, 97-627, p. 5 (La.App. 5 Cir. 11/25/97), 704 So.2d 307, 309, writ denied, 99-507 (La.8/25/99), 747 So.2d 50. However, LSA-C.E. art. 608 B provides: “Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of a crime as provided in Articles 609 and 609.1 or as constitutionally required.” LSA-C.E. art. 609.1 B provides that “[generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.”
Despite the general rule, the possibility that the prosecution may have leverage over a witness due to that witness’s pending criminal charges is recognized as a valid area of cross-examination. State v. Wiley, 10-811, p. 15 (LaApp. 5 Cir. 4/26/11), 68 So.3d 583, 592 (citing, State v. Rankin, 465 So.2d 679, 681 (La.1985), and State v. Brady, 381 So.2d 819, 822 (La.1980)). It is well-settled that a witness’s “hope or knowledge that he will receive leniency from the State is highly relevant to establish bias or interest.” Wiley, supra (citing, State v. Bowie, 00-3344, p. 10 (La.4/3/02), 813 So.2d 377, 385, cert, denied, 537 U.S. 951, 123 S.Ct. 416, 154 L.Ed.2d 297 (2002)).
Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less | ^probable than it would be without the evidence.” LSA-C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by law, and irrelevant evidence is not admissible. LSA-C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403. A trial judge’s determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Sandoval, 02-230, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La.10/3/03), 855 So.2d 308.
In State v. Gorman, 11-491 (La.App. 5 Cir. 2/14/12), 88 So.3d 590, defendant claimed the trial court erred by denying his request to question Detective John Carroll on his then-pending criminal charges. This Court found that the trial judge did not err by disallowing cross- *58 examination of Carroll regarding his arrests, noting that the Attorney General’s Office was handling the screening and prosecution of Carroll’s case and, therefore, the District Attorney’s Office had no ability to affect the outcome of Carroll’s case. This Court further noted that the record did not indicate and defendant did not allege that Carroll was promised anything by the District Attorney’s Office or the Attorney General’s Office in return for his testimony. Also, this Court stated that the allegations against Carroll regarding possession of steroids and conspiracy to distribute cocaine were irrelevant to the case and, therefore, there was little probative evidentiary value to disclosing the nature of Carroll’s arrest. Lastly, this Court asserted that there was no evidence that Carroll acted inappropriately in the case. Gorman, 88 So.3d at 596-97. See also State v. Wiley, 10-811 (La.App. 5 Cir. 4/26/11), 68 So.3d 583.
|HIn the instant case, we find that the trial judge did not err by prohibiting the defense from cross-examining Carroll regarding his arrests and pending charges. As in Gorman, the prosecutor in the instant case represented that the District Attorney’s Office was not prosecuting Carroll on his misdemeanor charges, and that the misdemeanor charges were being handled by the Attorney General’s Office. The prosecutor in the instant ease also represented that the Attorney General’s Office had refused the charges regarding conspiracy to distribute cocaine and steroids. It is noted that the State represents in its brief that the misdemeanor charges were referred by the Attorney General to the District Attorney of the 21st Judicial District, and were subsequently rejected as well.
Also as in Gorman, the record in the instant case does not indicate and defendant does not allege that Carroll was promised anything by the District Attorney’s Office or the Attorney General’s Office in return for his testimony. Similar to Gorman, the allegations in the instant case against Carroll regarding conspiracy to distribute cocaine and domestic battery are not relevant to the instant case and, therefore, there would be little probative evidentiary value to disclosing the nature of Carroll’s arrests. Lastly, in the instant case as in Gorman, there is no evidence that Carroll acted inappropriately. Although Carroll took defendant’s statement, the record does not reveal and defendant does not allege any irregularities in that statement.
In light of the foregoing, we find that the trial judge did not err by prohibiting the defense from cross-examining Carroll regarding his arrests and pending charges. We find this allegation of error to be without merit.
In his third allegation of error, the defendant alleges that his 67-year enhanced sentence is constitutionally excessive, considering his youth, the non-violent nature of his predicate offenses, and the fact that no one suffered any | ^lasting physical harm during the armed robbery in the instant case. The State responds that the trial judge did not abuse his discretion in imposing a sentence one year greater than the mandatory minimum sentence required by the habitual offender law.
On June 27, 2011, a multiple bill hearing was held, after which the trial judge found defendant to be a third felony offender. The trial judge then denied defendant’s “Motion to Depart from Mandatory Minimum Sentence Pursuant to LSA-R.S. 15:529.1.”
Under LSA-C.Cr.P. art. 881.1, a defendant must either move for reconsideration of his sentence at the time of sentencing *59 orally, or file a written motion to reconsider his sentence setting forth the specific grounds upon which the motion is based. The failure to state the specific grounds upon which the motion is based precludes the defendant from raising the issue on appeal. State v. Schieffler, 02-1047, p. 4 (La.App. 5 Cir. 2/25/03), 841 So.2d 1000, 1002, writ denied, 03-0741 (La.9/19/03), 853 So.2d 636. Such a failure limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Carter, 07-270, p. 10 (La.App. 5 Cir. 12/27/07), 976 So.2d 196, 203.
Defendant orally moved for reconsideration of sentence at the time of sentencing; however, he did not set forth specific grounds upon which the motion was based. Additionally, he did not file a written motion. As such, defendant is limited to a bare review of his sentence for constitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. State v. Taylor, 06-839, p. 3 (La.App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied, 06-0859 (La.6/15/07), 958 So.2d 1179. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless pain[lfiand suffering. Taylor, 06-839 at 3, 956 So.2d at 27. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice. Id., (citing State v. Lobato, 603 So.2d 739, 751 (La.1992)). The trial judge is afforded wide discretion in determining sentence, and the court of appeal will not set aside a sentence absent a clear abuse of the trial court’s discretion. State v. Pearson, 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Taylor, 06-839 at 3, 956 So.2d at 27; Pearson, 07-332 at 15-16, 975 So.2d at 656. The relevant question on appeal is whether the trial court abused its broad sentencing discretion, and not whether another sentence might have been more appropriate. Taylor, 06-839 at 3, 956 So.2d at 27; State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 cert, denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. Taylor, 06-839 at 4, 956 So.2d at 27 (citing State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, 342, cert, denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001)). When a trial court determines that the minimum sentence mandated by LSA-R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment,” or that the sentence amounts to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” the trial judge must reduce |17the sentence to one that would not be constitutionally excessive. Taylor, 06-839 at 4, 956 So.2d at 27-28.
However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. Taylor, 06-839 at 4, 956 So.2d at 28 (citing State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676). In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is “exceptional, which ... means that because of unusual circumstances this *60 defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case.” Id.
Downward departures from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in rare situations. Taylor, 06-839 at 4, 956 So.2d at 28. When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Id., 06-889 at 4-5, 956 So.2d at 28. Compliance with sentencing guidelines pursuant to LSA-C.Cr.P. art. 894.1 is not required when the sentence imposed is statutorily prescribed under the Habitual Offender Law. State v. Jenkins, 07-586, p. 6 (La.App. 5 Cir. 1/22/08), 977 So.2d 142,148.
As a third felony offender with an underlying conviction for armed robbery and two prior convictions for possession of cocaine, defendant faced a habitual offender sentence that ranged from 66 to 198 years. LSA-R.S. 15:529.1 A(b)(i); R.S. 14:64. He was sentenced to 67 years, one year greater than the mandatory minimum sentence.
After a review of the record, we find that the 67-year enhanced sentence is not constitutionally excessive. Defendant has not shown that he is exceptional because of unusual circumstances or that his sentence is not meaningfully tailored 11sto his culpability as the offender, the gravity of the offense, and the circumstances of the case. The record shows that defendant committed a violent offense of armed robbery when he, along with Dickerson and another individual, robbed Ms. Moorman while her ten-year-old son was in the back seat. Afterward, defendant and the other perpetrators led police on a lengthy high speed car chase in their attempt to escape, possibly endangering the lives of people along the way. Defendant received a 67-year enhanced sentence; however, he could have received a 198-year sentence as a third felony offender. Additionally, defendant has an extensive criminal history and, in fact, he committed the instant offense two months after a previous conviction.
Defendant argues that his sentence is excessive because of his youth. He was nineteen at the time of the commission of the crime. However, this Court has held that a defendant’s age is insufficient justification for a downward departure. See State v. Lee, 09-37, p. 8 (La. App. 5 Cir. 5/12/09), 15 So.3d 229, 233-34. Defendant also argues that his sentence is excessive because of the non-violent nature of his predicate convictions. However, while a defendant’s record of non-violent offenses may play a role in a sentencing judge’s determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676.
Lastly, this Court has upheld 66-year sentences for third felony offenders with underlying convictions of armed robbery. See State v. Horne, 11-204 (La.App. 5 Cir. 2/14/12), 88 So.3d 562, 568-71; State v. Otero, 09-468, pp. 7-10 (La.App. 5 Cir. 1/26/10), 31 So.3d 1125, 1130-32, writ denied, 10-489 (La.9/24/10), 45 So.3d 1072; and State v. Johnson, 03-620, pp. 14-15 (La.App. 5 Cir.10/28/03), 860 So.2d 180, 189-90, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849.
We find the trial judge did not abuse his discretion in sentencing. This allegation of error is without merit.
In addition, we have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, *61 556 So.2d 175 (La.App. 5 Cir.1990), and note the following errors.
On December 15, 2010, the State filed a “Notice of Intent to Invoke Firearm Sentencing Provision Under Louisiana Revised Statute 14:64.3.” LSA-R.S. 14:64.3 provides for an additional penalty of five years without benefit of parole, probation, or suspension of sentence to be served consecutively to the sentence imposed under LSA-R.S. 14:64 when the dangerous weapon used in the commission of an armed robbery is a firearm. Although the State filed this notice, the jury charges did not reference “armed robbery with a firearm.” The verdict sheet is not in the record and, therefore, it is unknown whether it referenced “armed robbery with a firearm.” At trial, however, the State presented evidence to show that guns were the only weapons used in the commission of the armed robbery.
The trial judge did not reference LSA-R.S. 14:64.3 during sentencing, nor did he state that he was imposing an additional period of incarceration when imposing defendant’s armed robbery sentence. Since the State intended to utilize the provisions of LSA-R.S. 14:64.3, it appears that the armed robbery sentence is indeterminate because the trial judge did not state whether the sentences included the firearm enhancement. Nevertheless, the sentence on the armed robbery conviction, Count 4, was vacated before defendant was resentenced as a multiple offender, and therefore any errors patent relating to this sentence are considered | ?nmoot. State v. Declouet, 09-1046, pp. 29-30 (La.App. 5 Cir. 10/12/10), 52 So.3d 89, 108-09, writ denied, 10-2556 (La.4/8/11), 61 So.3d 681.
Second, the trial judge failed to impose the mandatory fine of not less than $1,000.00 nor more than $5,000.00 as required by LSA-R.S. 14:95.1 B on Count 2. This Court has the authority to correct an illegally lenient sentence. LSA-C.Cr.P. art. 882. However, this authority is permissive rather than mandatory. In State v. Horton, 09-250, p. 10 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 376, this Court noted defendant’s indigent status and declined to correct an illegally lenient sentence where the district court failed to impose a mandatory fine. In the instant case, it is noted that defendant is indigent, since he is represented by the Louisiana Appellate Project, which provides appellate services for indigent criminal defendants in non-capital felony cases. Due to defendant’s indigent status, we decline to remand this matter for imposition of the mandatory fine. Horton, supra.
Third, the record reflects that the trial judge did not advise defendant of his multiple offender rights, as required by LSA-R.S. 15:529.1, which provides that the trial court shall inform the defendant of the allegations contained in the bill of information and of his right to be tried as to the truth thereof according to law, and shall require the offender to say whether the allegations are true. LSA-R.S. 15:529.1 implicitly requires that the trial court advise the defendant of his right to remain silent. Nevertheless, we find that this failure was harmless error, because defendant denied the allegations of the multiple bill, and because his multiple offender status was established by competent evidence offered by the State at the hearing, rather than by the admission of defendant. See State v. Muhammad, 03-419 (La.App. 5 Cir. 6/29/04), 880 So.2d 29, 35, writ denied, 04-2082 (La.1/7/05), 891 So.2d 669.
| ¾1 Finally, we note that neither the transcript nor the commitment pertaining to the enhanced sentencing reflects that the trial judge advised defendant of the provisions of LSA-C.Cr.P. art. 930.8 at the time *62 of the enhanced sentencing, although the transcript pertaining to the original sentencing reflects such an advisal. We therefore advise the defendant, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. arts. 914 or 922.
For the above discussed reasons, the defendant’s convictions and sentences are affirmed.

AFFIRMED

. Glenn Dickerson was also charged in that same bill of information with possession of a *52 firearm by a convicted felon in violation of LSA-R.S. 14:95.1 (Count 3), armed robbery of Gregory Barbier while armed with a firearm in violation of LSA-R.S. 14:64 (Count 6), and in Counts 4 and 5 along with Dorsey.

. On October 27, 2011, this Court granted the State’s motion to consolidate ll-KA-745 and 1 l-KA-955.