COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VERSUS

ANTHONY JACK
AKA ANTHONY KWONSKIEE JACK

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 98288-F
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.

**AFFIRMED.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA   70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Anthony Jack**

**Trent Brignac**
**District Attorney**
**Julhelene E. Jackson**
**Assistant District Attorney**
**Post Office Drawer 780**
**Ville Platte, LA   70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**AMY, Judge.**

After a deputy was dispatched to a residence, the State charged the defendant with one count of resisting an officer with force or violence and one count of aggravated battery. Following jury selection, one of the jurors notified the court that she was related to the defendant's grandmother, and the trial court excused the juror and replaced her with an alternate. The defendant moved for a mistrial, which was denied, and the jury ultimately convicted the defendant as charged. The defendant now appeals. For the following reasons, we affirm.

## Factual and Procedural Background

After being dispatched to a residence in reference to an "Unauthorized Use complaint," Deputy Joshua Uhlman of the Evangeline Parish Sheriff's Office included, in pertinent part, the following narrative in his complaint report:

> Upon arrival I spoke to Mr. Julius Thomas who stated that his girlfriend's grandson Anthony Jack took his car without permission but pulled back up in the car before my arrival. . . .
>
> I then turned to Anthony, who was standing on the side of the yard and advised him to come see I need to talk to him. He then put up his hands in a fighting position and kept saying "I will whip your ass". I advised him to stand down and to place his hands behind his back but he took off running. I then gave chase on foot and radioed into dispatch to send another unit. While running, Anthony picked up a glass bottle that was lying in a yard and threw it towards me. I was able to move out the way of the bottle. The foot chase then continued into a yard . . . and that is when Anthony picked up a long board and swung it towards me hitting me in my left side of my chest with it causing me to fall backwards. Anthony then came towards me with the board while I was on the ground and attempted to hit me in my head with the board. I then drew my service weapon and aimed it at Anthony and gave the verbal command to drop the board. Anthony complied with the order and I was able to get back up and I re holstered my service weapon and pulled out my impact baton and gave the verbal command to stop resisting and get on the ground. Anthony refused and took a swing at me with a closed fist. He missed then stated "I will shoot you" and picked up his right hand and made a gun gesture towards me. I then swung my impact baton striking him . . . and he took off running again. I then gave chase again and was

able to catch up to him. Anthony then stopped and attempted to swing at me with a closed fist again but missed. I then gave the command to stop resisting but he refused to comply. I then struck Anthony . . . and that is when [Deputy] Kent Vidrine arrived to assist. Anthony was still resisting and [Deputy] Vidrine administered a short 2 second burst of Pepper Spray. At this point [Deputy] Joshua Estes also arrived and Anthony was taken into custody.

Anthony Jack was transported to the Evangeline Parish Jail by [Deputy] Estes. While in transport to the jail, Anthony spit on [Deputy] Estes in the patrol unit and started to fight with [Deputy] Estes in the patrol unit.

On March 10, 2014, the State filed a bill of information by which the defendant, Anthony Jack, was charged with two counts of resisting an officer with force or violence; two counts of aggravated battery; and one count of aggravated assault. Subsequently, the bill of information was amended three times.[1] The third bill of information, upon which the State proceeded to trial, charged the defendant with one count of resisting an officer with force or violence, a violation of La.R.S. 14:108.2(A)(3), and one count of aggravated battery, a violation of La.R.S. 14:34. The defendant pled not guilty, and a jury trial began on April 3, 2017.

On April 4, 2017, on day two of the trial, Juror #1, Elizabeth Bellard, approached the bailiff about some concerns she had. Referring to the defendant's grandmother, whom she said she had observed in the courtroom, Ms. Bellard notified the trial court: "I know the lady . . . [my brother, my sister, and I] call her Aunt Annie." When asked whether she knew the defendant and whether she knew if she was related to the defendant, Ms. Bellard answered, "I don't know him" and "I don't [know] but if that's his grandmother then we['re] related." The trial court followed up by asking Ms. Bellard whether that would affect her ability to be fair

_____

[1] The amended bill of information charged the defendant with two counts of resisting an officer with force or violence and one count of battery of a police officer.

The second amended bill of information charged the defendant with two counts of resisting an officer with force or violence and one count of aggravated battery.

and impartial to which she responded, "Yes it will." The trial court instructed Ms. Bellard not to speak to the other jurors while the court and the attorneys discussed the matter.

Subsequently, Juror #5, Rebecca Fontenot, was interviewed by the court and explained that Ms. Bellard is her aunt. Ms. Fontenot indicated that Ms. Bellard had just told her about Ms. Bellard's relationship to the defendant's grandmother. When asked whether she was related to the defendant's grandmother or the defendant, Ms. Fontenot responded: "I've never seen her or him before." The trial court asked Ms. Fontenot whether this affected her ability to be fair and impartial, and Ms. Fontenot answered, "no." Additionally, the trial court asked Ms. Fontenot if she could judge the case strictly based on the evidence and if she would be fair to both sides, to which she responded, "Yeah."

> Following Ms. Bellard's revelation, defense counsel stated:
>
> I would have picked my jury differently if I would have known she would have been challenged for cause. Okay it changed the way I used my back strikes . . . changed the makeup of the jury. I tried to make the makeup as close to the actual community[.]
>
> . . . .
>
> [Mr. Jack] deserves [a] jury of his peers[.]

In particular, defense counsel argued that to remove Ms. Bellard from the jury and replace her with the alternate would change the racial composition of the jury. However, citing Ms. Bellard's testimony that she could not be fair and impartial, the trial court notified the parties of its decision to excuse Ms. Bellard from the jury and replace her with the alternate juror. Defense counsel objected, asserting: "[W]e feel that we have suffered substantial prejudice to our case and the jury panel is no longer a jury panel we freely choose chose [sic]."

3

Thereafter, defense counsel moved for a mistrial, arguing:

> [S]he tainted the jury if she lied in Voir Dire and I picked a six man jury based on her lies then it taints my own jury pool and I should get to pick a new jury that's more fair to my client and more representative to a jury of his peers.

The trial court denied the defendant's motion, stating:

> I don't believe that Ms. Bellard made an intentionally false statement on Voir Dire because when she came in here she admitted that she just found out that she maybe [sic] related. Number two I don't believe that it would prevent a fair trial. Everybody picked the jury there was one removed and had Ms. Bellard stated that last time it may or may not have affected how you . . . chose your jury but the fact is I don't know that it would of [sic] affected anything. So I don't believe that it prevents a fair trial . . . the jury is still made up of a cross section of the community female, male, white, and black and I don't believe the mere argument of race at this point shows any actual racial issues that have come up. . . . so motion denied.

Defense counsel asked the trial court to instruct the remaining jurors to disregard any conversations and interactions that they might have had with Ms. Bellard, but the trial court denied this request too. On April 4, 2017, the jury convicted the defendant as charged. Defense counsel moved for a judgment of acquittal, which was denied by the trial court.

On April 21, 2017, after the defendant was convicted of resisting an officer and aggravated battery but before the sentencing hearing on those charges, the State filed another bill of information under the same docket number. The bill of information charged the defendant with battery of a police officer, a violation of La.R.S. 14:34.2, and aggravated assault, a violation of La.R.S. 14:37. According to the minutes, the defendant ultimately pled guilty to these charges and was sentenced to serve six months on each charge, with the sentences to run concurrently. Additionally, a fine, court costs, and other fees were imposed.

4

On June 22, 2017, the trial court sentenced the defendant to three years at hard labor and a fine of $1500.00 for resisting an officer with force or violence and to seven years at hard labor and a fine of $2500.00 for aggravated battery, with the sentences to run concurrently. Thereafter, the defendant filed a "Motion of Amendment of Sentence"; a "Motion and Order to Reconsider Sentence"; and a "Motion To Correct A[n] Illegal Sentence." The trial court denied the motions. The defendant now appeals, asserting the following assignment of error: "The trial court erred in failing to grant Anthony Jack's Motion for Mistrial."

## Discussion

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim.P. art. 920(2). Upon review, we find that there are no errors patent.

However, we note that there is a procedural issue. As discussed above, after the defendant was convicted of resisting an officer and aggravated battery, but before the sentencing hearing on those charges, the State filed another bill of information under the same docket number. That bill of information charged the defendant with battery of a police officer and aggravated assault, and the defendant pled guilty to both charges. The defendant's convictions for battery of a police officer and aggravated assault are misdemeanors,[2] and the proper appellate review for these offenses is by writ of review, not an appeal. La.Code Crim.P. art. 912.1.

---

[2] In pertinent part, La.R.S. 14:2(A) provides:

The defendant has not challenged his misdemeanor convictions. Rather, his only assignment of error concerns the denial of his motion for mistrial regarding his convictions for resisting an officer with force or violence and aggravated battery. Therefore, we hereby sever the misdemeanors from this appeal and instruct the defendant that if he chooses to seek review of the misdemeanors, he must file an application seeking supervisory review with this court within thirty days of the court's ruling on appeal. *See State v. LeBlanc*, 08-1533 (La.App. 3 Cir. 6/10/09), 12 So.3d 1125, *rev'd on other grounds*, 09-1355 (La. 7/6/10), 41 So.3d 1168; *State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286, *writ denied*, 05-0871 (La. 12/12/05), 917 So.2d 1084.

*Motion for Mistrial*

As discussed above, in briefing to this court, the defendant argues that the trial court erred in failing to grant his motion for mistrial, which was "based on false statements given in voir dire." In briefing to this court, the defendant reiterates the arguments that defense counsel made to the trial court. In particular, the defendant asserts that defense counsel would have picked the jury differently if

---

A. In this Code the terms enumerated shall have the designated meanings:

. . . .

(4) "Felony" is any crime for which an offender may be sentenced to death or imprisonment at hard labor.

. . . .

(6) "Misdemeanor" is any crime other than a felony.

The defendant pled guilty to battery of a police officer, a violation of La.R.S. 14:34.2, which provides, in pertinent part: "Whoever commits the crime of battery of a police officer shall be fined not more than five hundred dollars and imprisoned not less than fifteen days nor more than six months without benefit of suspension of sentence." La.R.S. 14:34.2(B)(1). The defendant also pled guilty to aggravated assault, a violation of La.R.S. 14:37, which provides, in pertinent part: "Whoever commits an aggravated assault shall be fined not more than one thousand dollars or imprisoned for not more than six months, or both." La.R.S. 14:37(B).

6

the defense had known that Ms. Bellard could be challenged for cause. The defendant also re-urges that excusing Ms. Bellard and replacing her with the alternate juror changed the racial makeup of the jury. Citing *State v. Carmouche*, 01-0405 (La. 5/14/02), 872 So.2d 1020, the defendant argues that the trial court erred in not ordering a new trial or dismissing the jury panel when Ms. Bellard was excused. Further, and citing *State v. Marlowe*, 10-1116 (La.App. 4 Cir. 12/22/11), 81 So.3d 944, *writ denied*, 12-0231 (La. 5/18/12), 89 So.3d 1191, the defendant states that the trial court should have questioned all of the jurors to see if Ms. Bellard had spoken with them in order to determine "whether the jury was tainted."

Louisiana Code of Criminal Procedure Article 775 is titled "Mistrial; grounds for" and provides, in pertinent part:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> . . . .
>
> (6) False statements of a juror on voir dire prevent a fair trial.
>
> Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

The trial court has discretion in deciding whether to grant a mistrial when a juror has made a false statement during voir dire, and the trial court's ruling should not be disturbed on appeal absent a clear showing of abuse of discretion. *State v. Short*, 94-0233 (La.App. 4 Cir. 5/16/95), 655 So.2d 790, *writ denied*, 95-1520 (La. 11/17/95), 663 So.2d 719. In discussing La.Code Crim.P. art. 775, the fifth circuit has explained:

> A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable

7

> expectation of a fair trial. *State v. Davis*, 08-165, p. 17 (La.App. 5 Cir. 7/29/08), 993 So.2d 295, 305, *writs denied*, 08-2188 [(]La.5/1/09), 6 So.3d 810, and 08-2200 (La.5/1/09), 6 So.3d 811. Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. *Id.*
>
> . . . .
>
> The trial court has discretion to use the services of an alternate juror, rather than to grant a mistrial, upon a proper finding that this is the best course of action. *State v. Tatum*, 09-1004, p. 17 (La.App. 5 Cir. 5/25/10), 40 So.3d 1082, 1092.

*State v. Dorsey*, 11-745, 11-955, pp. 9-10 (La.App. 5 Cir. 4/24/12), 94 So.3d 49, 56 (affirming the trial court's decision to deny the defendant's motion for mistrial, dismiss a juror, and replace that juror with an alternate after the juror notified the trial court that he had told other jurors that he knew one of the victims), *writ denied*, 12-0998 (La. 10/12/12), 99 So.3d 39. With this standard in mind, we turn to the facts of the case.

Regarding the defendant's assertion that false statements were made during voir dire, Ms. Bellard explained to the trial court that she did not realize that she was related to the defendant's grandmother until the second day of trial after seeing the defendant's grandmother in the courtroom. Upon this realization, Ms. Bellard notified the trial court about the relationship and told the trial court that this would affect her fairness and impartiality. As discussed above, in denying the defendant's motion for mistrial, the trial court stated: "I don't believe that Ms. Bellard made an intentionally false statement on Voir Dire because when she came in here she admitted that she just found out that she maybe [sic] related." Accordingly, we find no abuse of the trial court's discretion in its denial of the motion for mistrial based on allegedly false statements made during voir dire.

8

Next, we consider whether the trial court abused its discretion in concluding that the defendant had not suffered substantial prejudice such that he could not receive a fair trial. We first address the defendant's assertions that defense counsel would have picked the jury differently if the defense had known that Ms. Bellard could be challenged for cause and that excusing Ms. Bellard and replacing her with the alternate juror changed the racial makeup of the jury. As discussed above, the trial court denied the defendant's motion for mistrial and stated: "Everybody picked the jury . . . the jury is still made up of a cross section of the community female, male, white, and black and I don't believe the mere argument of race at this point shows any actual racial issues that have come up." We find no abuse of the trial court's discretion in its rejection of the motion for mistrial in this regard.

We next address the defendant's argument that the trial court erred in failing to order a new trial, dismiss the jury panel, or question the jurors based on comments that Ms. Bellard might have made to the other jurors. As discussed above, "[a] mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial." *Dorsey*, 94 So.3d at 56. For example, in *Carmouche*, 872 So.2d 1020, which was cited by the defendant in briefing to this court, a prospective juror commented about a sanity report pertaining to the defendant and of which she had knowledge, and other prospective jurors overheard her comment. The trial court denied the defendant's motion for mistrial. *Id.* On appeal, the supreme court concluded that the trial court had not abused its discretion in finding that there was no prejudice. *Id.* In the other case cited by the defendant, *Marlowe*, 81 So.3d 944, a deputy sheriff overheard one of the jurors state: "I don't care if they keep me here for three days,

9

I'm going to vote guilty." Subsequently, defense counsel requested individual voir dire regarding the juror's comment, and each juror was questioned by the State and defense counsel to determine if the jury panel had been tainted. *Id.*

Here, we find no abuse of the trial court's discretion in denying the defendant's motion for mistrial. Initially, we note that no grounds for mistrial under La.Code Crim.P. arts. 770 and 771 are presented here. As discussed above, after Ms. Fontenot, Ms. Bellard's niece, notified the trial court that she had spoken with Ms. Bellard about Ms. Bellard's relationship to the defendant's grandmother, the trial court interviewed Ms. Fontenot. Ms. Fontenot stated that she had never seen the defendant or his grandmother before; that her ability to be fair and impartial was not affected; that she could judge the case strictly based on the evidence; and that she would be fair to both sides. Aside from Ms. Fontenot, the record does not indicate that the other remaining jurors were related to the defendant or spoke to Ms. Bellard about her relationship to the defendant's grandmother. Even if the other jurors had spoken to Ms. Bellard and had knowledge of her relationship to the defendant, such knowledge is unlikely to have affected the jurors' ability to be fair and impartial or to have otherwise tainted the jury or prejudiced the defendant. *See Dorsey*, 94 So.3d 49. *See also State v. Cushenberry*, 407 So.2d 700, 702 (La.1981) (wherein the supreme court concluded that the prospective "juror's comment was less than overwhelming and would not have influenced any other juror even if it was heard" after the prospective juror stated during voir dire that she had been a robbery victim and that the defendant resembled the person that had robbed her).

Moreover, the trial court corrected any perceived prejudice by dismissing Ms. Bellard and replacing her with the alternate. *See Dorsey*, 94 So.3d 49.

10

Regarding the defendant's assertion that the trial court should have questioned the remaining jurors to determine if Ms. Bellard had spoken with any of them, we note that in this case, unlike in *Marlowe*, 81 So.3d 944, the record does not indicate that the defendant requested individual voir dire to ascertain whether the jurors spoke to Ms. Bellard.

Based on the foregoing, we find no abuse of the trial court's discretion in its conclusion that any comments Ms. Bellard might have made to the other jurors about being related to the defendant's grandmother did not cause the defendant to suffer substantial prejudice such that he could not receive a fair trial. *See Dorsey*, 94 So.3d 49. We also find no merit in the defendant's argument that the trial court should have interviewed each of the remaining jurors. *See Marlowe*, 81 So.3d 944.

## DECREE

For the foregoing reasons, we affirm the convictions and sentences of the defendant, Anthony Jack, for resisting an officer with force or violence and aggravated battery. The defendant's misdemeanor convictions for battery of a police officer and aggravated assault are severed from the appeal. The defendant is instructed that he has thirty days from this court's ruling on appeal to file an application seeking supervisory review of the misdemeanors, if he so desires.

**AFFIRMED.**